IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD PIXLER,<br><br>                Petitioner,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>                Respondent. | CASE NO. CV 04-0108-S-MHW<br><br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## Introduction.

Currently before the Court for its consideration is the Petitioner's request for judicial review (Docket No. 1) of the Respondent's denial of social security disability benefits, filed March 3, 2002. Petitioner brought this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g). The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the Administrative Record ("AR"), and submits its Memorandum Decision as follows.

**Bench Memo - Page 1**

I.
Background.

A.     **Administrative Proceedings.**

Petitioner, Ronald Pixler, filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 13, 2001.  He alleged disability since December 1, 2001.  (AR 16.)  The applications were denied initially on May 10, 2002, and upon reconsideration on August 8, 2002.  (AR 38, 47.)  After a timely request for a hearing was filed on August 12, 2002, Petitioner, represented by counselor Andrea L. Cardon appeared and testified before Administrative Law Judge ("ALJ") Robin L. Henrie on January 9, 2003.  (AR 15.)  James J. Grissom testified as a vocational expert.  (AR 15.)

Judge Robin Henrie considered the testimony and all other evidence of record, and on June 26, 2003, issued a decision finding Petitioner not disabled within the meaning of the Act, and was therefore not entitled to disability insurance benefits or supplemental security income. (AR 24.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on December 30, 2003.  (AR 4.)  20 C.F.R. §§ 404.981, 416.1481 (1991).  Petitioner has exhausted all administrative remedies and is therefore seeking judicial review pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

B.     **Statement of Facts.**

At the time of the hearing before the ALJ, Petitioner was 48 years old.  (AR 227.) Petitioner testified that he has a high school education.  (AR 227.)  Petitioner's prior work experience consisted of employment as a forklift operator.  (AR 16).  Petitioner alleged disability

**Bench Memo - Page 2**

since December 1, 2001 due to being diabetic, having a bad left knee joint, and numbness and pain in his left arm and hand. (AR 16).

Since September 28, 1975, Petitioner has been treated and/or evaluated by various medical professionals. Petitioner was seen with right knee pain and swelling on that date. He was diagnosed with a lateral meniscus strain. (AR 102.) He was then seen various times for the same type of pain through for the next five years. (AR 102.) The record shows that he was diagnosed with chondromalicia in that time period and that the pain in the knee has been substantially the same since that period. (AR 102.) In addition, In 1987, Petitioner fell on his left knee and suffered an injury resulting in arthroscopic surgery and was also told that he had arthritis in the knee. (AR 102.)

More recently, Petitioner consulted Dr. Michael Widmer at Mercy Medial Center with complaints of atypical chest pain on November 30, 2000. (AR. 169.) After exercise stress testing with adjunct echocardiographic imaging, Petitioner was negative for ischemia or infract. (AR. 169.) Then on March 25, 2002, Petitioner attended a consultive internist examination by Dr. Hugh Eddy where he complained of numbness of the toes of both feet and numbness of his left little finger and left ring finger. (AR 134.) He also complained of pain in his right shoulder with limited motion, and continued in stating that his right knee was also painful with weight bearing. (AR 134.) Dr. Eddy's impression was diabetes mellitus type 2, exogenous obesity, left ulnar neuropathy, orthopedic problems probably representing degenerative arthritis of the right shoulder and knees, mild elevation of blood pressure, hypertriglyceridemia based on previous records, dental carries, and fungal infection of the feet and onychomycoses of the toenails of both feet. (AR 136.)

**Bench Memo - Page 3**

The Petitioner was then seen at the Boise VAMC on April 10, 2002 by Dr. Samual C. Taylor regarding his right knee disability resulting from the injury described above. (AR 102.) Petitioner also complained of pain in his left knee. Dr. Taylor found that Petitioner could squat and flexation of his right knee was 110 and the left knee was 100 with extension of 0 on both sides. (AR 102.) Further, with patellar movement on the right, there was pain with transverse and especially vertical movement. On the left, there was pain with movement in any direction, and there was fluid present in the joint. (AR 102.) The right knee was tender laterally, and the left knee was tender both medically and laterally. (AR 102.) The drawer tests were negative, while the cruciate and collateral ligaments were intact. Dr. Taylor's impression was also chondromalacia in the right knee. (AR 102.)

Later, Dr. Serio's records dated June 7, 2000 show diagnosis of diabetic neuropathy in the toes, diabetic peripheral neuropathy, with lightheadness and blood sugars between 80 and 120. (AR 113.) Soon after, Petitioner was seen at the Terry Health Services Clinic where he was noted to have diabetes type II, vertigo, hypertension, joint pain/swelling, deceased sensation in his fingers and feet as well as burning in his feet, and to weigh 315 pounds. (AR 105.)

Petitioner was then seen again at Mercy Medical Center on August 27, 2002 for nuclear myocardial perfusion imaging, which revealed a fixed inferior defect consistent with either prior inferior wall myocardial infarction scar or diaphragmatic attenuation artifact. (AR 164-65.) Then on December 5, 2002, once again at the Terry Reilly Health Services clinic, the Petitioner was found to have decreased ROM in the right shoulder with pain at the AC joint, numbness and tingling on the neuro examination, hypertension, and left knee weakness - "wear brace at all times," with a weight of 319. (AR 159.)

**Bench Memo - Page 4**

## II.
## Findings of the Administrative Law Judge.

In the decision issued following the hearing (AR 15-24), the ALJ made specific findings as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set fourth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has diabetes with peripheral neuropathy and chondromalacia of the right knee. Impairments which are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.152(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds that claimant's allegations regarding his limitations are not totally credible for the reasons set fourth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant had the following residual functional capacity: sedentary work with a sit/stand and further limitations as detailed above.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

**Bench Memo - Page 5**

9.  The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416,1563).

10.  The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

11.  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR 404.1568 and 416.968).

12.  The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

13.  Although the claimant's external limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as addressor (20,000 nationally), food and beverage order clerk (70,000 nationally), parimutual ticket checker (85,000 nationally with a reduction of 50%), and telephone quotation clerk (16,000 nationally).

14.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision [20 CFR §§ 404.1520(f) and 416.920(f)].

### III.
### Standard of Review.

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C.

§ 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); and *Flaten v. Secy of HHS,* 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute

[its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits. 20 C.F.R. §§ 404.1520, 416.920 (1996)*; Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If the claimant is engaged in such activity, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ determined that the Petitioner was not involved in any substantial gainful activity. (AR 16.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1). If the claimant does not have a severe impairment or combination of impairments, disability benefits

**Bench Memo - Page 8**

are denied.  The ALJ here found that Petitioner's diabetes with peripheral neuropathy and chondromalacia of the right knee did significantly limit his ability to engage in basic work activities and therefore did constitute a severe impairment.  (AR 16-17.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. §§ 404.1520(d); 416.920(e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   The ALJ here determined that Petitioner did not possess the findings upon examination which are required in order for disability to be predicated on medical considerations alone, and that Petitioner's impairments did not meet or equal the severity of any listing of impairments.  (AR 17.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's

capabilities. 20 C.F.R. §§ 404.1520(f), 416.920(f).  In the instant case, the ALJ determined from the evidence that the Petitioner did retain the residual functional capacity for essentially the full range of sedentary work because he is able to lift up to ten pounds with is left hand with the right hand as a helper hand, he can sit intermittently for six hours out of eight, can walk or stand intermittently for two out of eight hours, and can use his hands and arms for repetitive actions. (AR 20.)  The ALJ noted that Petitioner is further limited to walking no more than short distances and that he has difficulty with other activities involving climbing, stooping, kneeling, crouching, and crawling, and further that he probably is not suitable to perform light exertional work, but that he could perform sedentary work.  (AR 20-21.)  On the basis of this review, the ALJ determined that Petitioner was not disabled within the meaning of the Act.

## IV.
## Issues Raised.

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner raises two issues for the courts review:

1)  Whether the ALJ properly supported his findings that the Petitioner was not credible.

2) Whether the ALJ properly supported his findings with regard to the Petitioner's residual functional capacity.

The Court will take each argument in order.

**Bench Memo - Page 10**

A.      **Petitioner's credibility.**

Petitioner argues that the ALJ's rejection of his testimony is not properly supported. He argues that the ALJ failed to point to specific evidence in the record which contradicts the Petitioner's testimony relating to the severity of his pain. Petitioner argues that, "[w]hen the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Secretary*, 933 F.2d 735 (9th Cir. 1991). In addition, once the existence of symptoms is supported by the record, the agency must make specific findings against the testimony of Petitioner and satisfy a "clear and convincing" standard if there is no evidence of malingering. *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir. 1989). Furthermore, if Petitioner submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that the level of pain experienced is at a higher level, the Secretary may reject the "excess pain" testimony only on the basis of specific findings providing adequate justification. *Cotton v. Bowen*, 799 F2d 1403 (9th Cir. 1986).

In the case at bar, Petitioner contends that there was no discussion found in the ALJ's report that related to the Petitioner's credibility or to any further rejection of the "excess pain," other then a statement that Petitioner wasn't credible and that the ALJ believed that "his estimation of his incapacitation is not supported by the medical evidence, to the degree alleged." (AR 20.) The record show that Petitioner submitted objective medical evidence that revealed his diabetes, neuropathy, arthritis, and other aliments. The ALJ then made a determination against the Petitioner by asserting discrepancies existed between the examining practitioners' reports, but did not make specific findings identifying or referencing the discrepancies. Instead the ALJ

concluded that Petitioner could cook, visit family, take 2 one-hour walks per day, and participate in a 2 day hunting trip as evidence that Petitioner overstated his pain.  Under some circumstances, these activities may provide specific findings adequate enough to  find a lack of credibility.  However, the record indicates that the aforementioned activities were overstated by the ALJ, and because of this the court cannot find substantial evidence to support the ALJ's decision.

First, the ALJ notes that Petitioner lacks credibility because he can cook.  (AR 20.) However, a more detailed analysis of the record shows that Petitioner has to sit down 8 or more times and often has to lay down during preparation of a meal that take 25 to 30 minutes to complete.  (AR 223.)  Also, if Petitioner cooks meals in a pot or skillet, he has difficulty draining the food because he can only use one hand.  If he does cook in a pot or skillet, someone else has to move the pot, or drain the pot.  (AR 208.)

Second, the ALJ notes that Petitioner's claims for "excess pain" are not credible because he can visit family.  (AR 20.)  However, the record indicates that Petitioner visited his son, who lives only two blocks away,  for a few hours and was "sitting down most of the time, except for to get up [sic] once in awhile to go to the bathroom or to get the pressure off of [his] knees." (AR 201.) The facts on the record do not indicate a specific finding sufficient to discredit the testimony of the Petitioner.

Third, the ALJ notes that Petitioner takes two one-hour walks each day, with breaks. (AR 20.)  The record indicates that the walks Petitioner takes are around his block and take *him* an hour because he has to stop and rest every 50 yards.  (AR 195.)  Testimony on the record indicates that he has to stop and rest 4-5 times on each of these walks.  (AR 194-95.)  In

**Bench Memo - Page 12**

addition, the record shows that the reason Petitioner takes walks is because they are proscribed by a doctor to help regulate his diabetes. (AR 195.) This is hardly an activity that demonstrates a lack of credibility in the Petitioner's claims of pain.

Lastly, the ALJ states that the Petitioner went on a two day hunt, but took it easy in camp. (AR 20.) However, the record indicates the hunting trip used to discredit Petitioners credibility consisted of Petitioner sitting and laying down in camp for two days. (AR 201.) In fact, Petitioner's son testified, "the farthest he might have walked from camp was maybe 10 yards, 15 yards at the most." (AR 222.) In addition, the record shows that the two day hunting trip was the longest Petitioner had been away from home, and during that period he was not even able to hold up his own rifle. (AR 197, 201.) This type of activity cannot be construed as substantial evidence that Petitioner's assertions of pain were not credible.

It is the Court's opinion that the ALJ did not sufficiently consider the facts of the record as to the credibility of Petitioner because events and circumstances that are relied upon by the ALJ to discount the credibility of Petitioner were overstated. This overstatement of events, coupled with the lack of specificity concerning ALJ's findings of discrepancies between Petitioners alleged pain and the examining practitioners reports, leads the Court to conclude that the ALJ did not meet the legal standard required by the Ninth Circuit to set forth clear and convincing reasons for discrediting the Petitioner's testimony regarding his pain and limitations.

 **B.  Petitioner's Residual Functional Capacity.**

Petitioner asserts that there was not a complete analysis by the ALJ or the vocational expert as to the limitations on general sedentary employment. The specific disabilities of the

**Bench Memo - Page 13**

Petitioner were not taken into consideration in the hypotheticals because there was no mention of the impact of the disabilities on general regional or national sedentary employment.[1] Specifically, one or both of the Petitioner's hands are severely disabled. Petitioner further asserts this may be because the record does not include the complete testimony of the vocational expert.[2] The court is directed to Social Security Ruling ("SSR") 96-9p:

> Most unskilled sedentary jobs require good use of both hands and fingers; i.e. bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g. to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions...Any significant manipulative limitations of an individuals' ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

The Petitioner is left-handed and he testified that two fingers are going numb on his left hand and that his right hand is virtually useless due to numbness. (AR 197-199.) Dr. Eddy had noted during his examination in March 7, 2002 that Petitioner suffered from left ulnar neuropathy, or numbness in two fingers of Petitioner's left hand. (AR 134.) In addition, the ALJ's hypothetical states that the right hand shall be used as a "helper hand." (AR 228.) The Court finds that the hypothetical to the vocational expert did not adequately describe the limitations Petitioner experienced in both hands. The hypothetical to the vocational expert asked him to assume that Petitioner could do a full range of sedentary activity, including lifting with his left hand. (AR 227-228.) There is a lack of substantial evidence in the record to support this finding.

---

[1] The ALJ was sufficiently clear about the "stooping" limitation in the first hypothetical posed to the vocational expert where the limitations of "no kneeling, crawling and crouching" were included. (AR 228.) In addition, the ALJ sufficiently addressed the sitting and standing limitations as well as the obesity limitation in the second hypothetical by requiring the at-will sitting, standing and walking condition. (AR 232.)

[2] After review of the record, there is no indication that the testimony of the vocational expert was incomplete.

**Bench Memo - Page 14**

**V.**
**Conclusion.**

Based on its review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act should be remanded for a new hearing.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)  Plaintiff's petition for review (docket  # 1) is GRANTED.

2)  This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)  This Remand shall be considered a "sentence four remand," consistent with  42 U.S.C. § 405(g), and  *Akopyan v. Barnhart,* 296 F.3d 852, 854 (9th Cir. 2002).

DATED: July 6, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge